[PHILADELPHIA, APRIL 3d, 1837.]


EDWARDS *against* HOOPES.


IN ERROR.


A. one of the children of an intestate, took a tract of land of the intestate, under proceedings in partition, at a certain valuation, subject to a lien for the shares of the parties, and afterwards conveyed the tract to B., as whose property it was sold to C. at sheriff's sale, on a subsequent judgment, "subject to all legal incumbrances, by mortgage or otherwise, created prior to the entry of the judgment," &c. C. conveyed to the defendant, subject to the widow's third; the interest thereof payable to her during life, and the principal to be divided among the heirs of the intestate, at her decease. The heirs of the intestate assigned to the plaintiff all their right and title to the widow's third, as well the arrears of interest as the principal, and the defendant gave a bond to the plaintiff for the amount so assigned. *Held*, (1), that the share of A. of the valuation money was extinguished by his becoming the owner of the land upon which it was charged. (2) That as regarded the arrears of interest due in the lifetime of the widow, the plaintiff was not entitled to recover; the right to the same being in her *administrator*, and not in her *next of kin*.


THIS was a writ of error to the Court of Common Pleas of Chester county, to remove the record of an action of ejectment, brought by Samuel Edwards against Joshua Hoopes, to recover a tract of land, situate in that county.

In the court below a case was stated as follows, to be considered as a special verdict, without any exception as to the form of action.

" Enoch Taylor, late of the township of Upper Providence, in the county of Delaware and state of Pennsylvania, deceased, by his last will and testament, bearing date the 7th of August, 1800, and proved the 21st of September, 1801, did amongst other things give and devise as follows: ' I will that all my real estate in Newlin township, Chester county, and state aforesaid, together with all my real estate in Uwchlan township, in Chester county, and state aforesaid; also all my real estate in Upper Providence, Delaware county, state aforesaid, be valued by two honest, well informed and impartial men, who shall be chosen by my executors; and after such valuation, I will and direct that it be divided as follows: To my wife Elizabeth Taylor one-third of the value thereof during her natural life, she paying her proportional share of the expense, and costs of commissions incurred by such valuation. To my sons, Nathan

Taylor, Ezra Taylor, and Maris Taylor, I will that they have share and share alike, which is to be one hundred pounds more than my daughters, hereafter named, which they are to have, hold and possess for themselves, their issues, heirs, administrators or assigns, in fee simple for ever, they paying their proportional share respectively of the expense or costs of commissions incurred by said valuation. To my daughters, Eliza Taylor, Mary Taylor, Hannah Taylor, Jemima Taylor and Gula Taylor, I will and direct that the remainder be equally divided, share and share alike, which they are to have, hold and possess for themselves, their heirs, administrators or assigns, in fee simple for ever, they paying respectively their proportional share of the costs of commissions incurred by the said valuation.' And the said testator appointed his wife Elizabeth Taylor, and his two sons Nathan Taylor and Ezra Taylor, executors of his said will.

On the 16th of January, 1802, Joshua Pierce and Charles Wilson, who were chosen by the executors for that purpose, agreeably to the directions of the will, made a valuation of the several portions of the testator's real estate, as follows: The place in Newlin, Chester county, containing one hundred and thirty-seven acres, they valued at the sum of nineteen hundred pounds. The place in Uwchlan, Chester county, containing seventy-seven acres, they valued at the sum of five hundred and forty pounds. And the place in Upper Providence, Delaware county, they valued at the sum of twelve hundred pounds. The whole valuation, amounting to three thousand six hundred and forty pounds, which, after taking out the widow's thirds, to wit, the sum of one thousand two hundred and thirteen pounds, six shillings and eight pence, they divided amongst the eight children, as follows: To each son three hundred and sixty-five pounds, sixteen shillings and eight pence, and to each daughter, two hundred and sixty-five pounds, sixteen shillings and eight pence, allowing the sons one hundred pounds a piece more than the daughters, agreeably to the directions of the will. To Nathan Taylor, the eldest son, they adjudged the tract of land in Newlin, valued at the sum of one thousand nine hundred pounds, his mother's thirds to remain in the same during her natural life, and the remaining part, after his own share of three hundred and sixty-five pounds sixteen shillings and eight pence was taken out, they directed to be paid, or secured to be paid, to his sister, in one year after his father's decease. To Ezra Taylor, second son, they adjudged the tract of land in Upper Providence, valued at the sum of one thousand two hundred pounds, his mother's thirds to remain in the same during the term of her natural life, he paying or securing to be paid, to the other heirs, in one year after his father's decease, the sum of four hundred and thirty-four pounds, three shillings and four pence. And to Maris Taylor they adjudged the tract of land in Uwchlan, valued at the sum of five hundred and forty pounds, his mother's thirds to

remain in the same during the term of her natural life, he to receive in addition the sum of five pounds, sixteen shillings and eight pence, which they directed to be paid to his guardian, to make his share equal with his brothers.

The estate was not settled under the above valuations, and Nathan Taylor sued out a summons in partition in the Supreme Court of Pennsylvania, against Ezra Taylor, Levi Bailey and Mary his wife, Hannah Taylor, Jemima Taylor, Julian Taylor and Maris Taylor, returnable to March Term, 1804, in which judgment *quod partitio fiat* was rendered, and a writ *de partitione facienda* issued, returnable to September Term, 1804, to which James Kelton, Esq. High Sheriff of the County of Chester, made return that the lands and tenements in the said writ named, could not be divided according to the command of the said writ, without prejudice to or spoiling the whole thereof, and that the inquest had valued and appraised the same as follows, viz. One messuage and grist-mill, and one hundred and thirty-seven acres of land, situate in the township of Newlin, at the sum of £2126 8s. 4d.; one other messuage and seventy-seven acres of land, situate in the township of Uwchlan, at the sum of £539, and one other messuage and one hundred and twenty acres of land, situate in the township of Upper Providence, Delaware county, at the sum of £1138, which return and valuation were by the court confirmed on the first Monday of September in the year aforesaid, and on the 7th of September, the messuage, grist-mill, and one hundred and thirty-seven acres, situate in Newlin, valued at the sum of £2126 8s. 4d., was ordered and adjudged to Nathan Taylor, his heirs and assigns, and James Kelton, High Sheriff aforesaid, by order of the said court, by deed poll, duly executed and acknowledged in open court, on the 8th of September, in the year aforesaid, did grant and convey the said messuage, grist-mill, and tract of land, unto the said Nathan Taylor, his heirs and assigns forever, subject nevertheless to a lien thereon in favour of the other parties in the said writ named, until payment be made of their respective shares of the valuation money, according to the form and effect of an act of the General Assembly of this Commonwealth passed the 11th day of April, 1799. On this deed poll are endorsed the receipts in full of Levi Bailey, Ezra Taylor, and John Peirce, guardian of Hannah Taylor, Jemima Taylor, Julian Taylor and Maris Taylor, for their shares of said premises, except as to their shares of the widow's third, after her death.

Joseph Cloud and Eliza his wife, the daughter of Enoch Taylor, by indenture bearing date the 28th of January, 1833, conveyed to the said Nathan Taylor in fee simple, all their part, share, right, title and interest in the said messuage, grist-mill, and one hundred and thirty-seven acres of land in Newlin township aforesaid. And the said Nathan Taylor on the same day made and executed to the said Joseph Cloud, a bond and mortgage to secure the payment of

(Edwards v. Hoopes.)

three hundred and twelve pounds, two shillings and six pence, by instalments; that is to say, one hundred and sixty pounds, nine shillings and two pence, part thereof on demand, and one hundred and fifty-one pounds, thirteen shillings and four pence, the residue thereof, on the day of the decease of Elizabeth Taylor, widow of Enoch Taylor, deceased, which mortgage includes all the part, share, estate, right, title, and interest in the said messuage, grist-mill, and one hundred and thirty-seven acres of land, which they, the said Joseph Cloud and Eliza his wife, had conveyed to the said Nathan Taylor on the same day; and also, of and in two other messuages and tracts of land, one of them situate in Uwchlan township, Chester county, and the other in Upper Providence township, Delaware county; and the said mortgage was duly recorded in Chester county, in Mortgage Book H., vol. 8, page 292, the 2d day of February, 1803.

Joseph Cloud, the mortgagee, on the 7th day of April, 1826, made an assignment of the said bond and mortgage in due form to his son Joseph Cloud, junior; and the said Joseph Cloud, junior, on the 13th day of July, 1829, assigned the same in due form to Samuel Edwards, the plaintiff in this suit.

Nathan Taylor and Susanna, his wife, by indenture dated April 7th, 1803, conveyed nineteen acres of the tract of land in Newlin township, to Charles Wilson in fee, for the consideration of two hundred and twenty-eight pounds. And on the 19th of September, 1804, the said Nathan Taylor and wife, by indenture conveyed the residue of the said tract of land in Newlin, to Joseph Baker, Esq. in fee.

Sampson Babb, Esq. High Sheriff of the county of Chester, by deed poll, dated the 31st of October, 1821, conveyed all the right, title and interest of Joseph Baker, Esqr. in the said premises to Joseph Miller, in fee, subject to all legal incumbrances by mortgage or otherwise, created prior to the entry of the judgment on which the premises were sold, was entered.

Joseph Miller and Rachel his wife, by indenture dated the 15th of March, 1823, conveyed the same to Joshua Hoopes, the defendant, in fee; subject always nevertheless to the payment of a judgment of $2000 to David Chalfant, entered in the Common Pleas of Chester county; and also to the payment of the annual dower of Elizabeth, (now the wife of William Twaddell,) late widow and relict of Enoch Taylor, deceased, being the interest arising on $1687 50 yearly and every year, during her natural life, and at her decease, the payment of the said principal money to and among the legal heirs of the said Enoch Taylor, deceased, over and above the consideration first mentioned. Joseph Miller paid the interest to the widow Elizabeth Twaddle as long as he continued the owner of the premises; and Joshua Hoopes, the defendant, paid the same after he became the owner, up to the 8th of September, 1826.

(Edwards *v.* Hoopes.)

Elizabeth Twaddell, the widow of Enoch Taylor, deceased, died on the 2d day of November, 1827.

The heirs of Enoch Taylor, deceased, to wit: William Walters and Mary his wife, (formerly Mary Taylor,) Jemima Anderson, (formerly Taylor,) Maris Taylor, Joseph King and Julian his wife, (formerly Taylor,) Joseph Hibbert, guardian of the children of Ezra Taylor, deceased, Eli D. Peirce, guardian of the children of Hannah Laycock, deceased, (formerly Taylor,) Doctor Joseph Cloud, jr., the son of Eliza Cloud, deceased, (formerly Taylor,) and Henry Taylor, son of Nathan Taylor, deceased; being four of the children and the representatives of the four deceased children of Enoch Taylor, deceased, have sold, assigned, and made over to Samuel Edwards, the plaintiff, all their interest, right and title to the widow's thirds in the said premises, or to the said sum of sixteen hundred and eighty-seven dollars and fifty cents, and the interest thereon due, of which transfer the defendant had notice before the commencement of this suit.

Since the commencement of this suit, the defendant has paid to the plaintiff the sum of eighteen hundred dollars.

On the 6th of May, 1829, the defendant gave the plaintiff a bond for two hundred and sixty-nine dollars, payable on the 6th day of July next ensuing the date, with interest, being for the interest in arrear upon the said dower up to the date of said bond. On the 31st of October, 1832, the defendant paid the plaintiff one hundred and thirty dollars, on account of said bond.

The question submitted for the opinion of the Court, is, whether under these circumstances, the plaintiff is entitled to recover. If the court should be of that opinion, then judgment to be entered for the plaintiff, to be released upon payment of the amount the court shall certify to be due; if otherwise, judgment to be entered for the defendant."

On the 6th of February, 1837, the Court below (Darlington, President) gave judgment for the plaintiff for the sum of $215 75. The opinion of the Judge concluded as follows:

" I therefore conclude that immediately upon the decease of Elizabeth Twaddell, on the 2d day of November, 1827, the premises in the hands of Joshua Hoopes, the defendant, became liable to pay to the brothers and sisters of Nathan Taylor, or their representative, the plaintiff, $\frac{1248}{1450}$ parts of the principal sum of $1687 50. The 207 parts which had pertained to Nathan in his own right, being, in the year 1804, merged and extinguished in the land itself, and conveyed to Joseph Baker. As to any arrearages of interest on dower, accruing before the death of Elizabeth Twaddle, the plaintiff or heirs can have no claim; the arrearages, if any, belong to the estate of Elizabeth Twaddle."

(Edwards v. Hoopes.)

The plaintiff took a writ of error on this judgment, and filed the following specifications, viz.

" 1. The court erred in not directing judgment to be entered on the case stated for the plaintiff, for the whole amount of the defendant's bond with interest.

2. The judge erred in deducting from the plaintiff's claim any part of the $1687 50, reserved to the widow on the interest accrued before his death."

Mr. *Kittera*, for the plaintiff in error

Mr. *Dillingham*, who was to argue for the defendant in error, was stopped by the Court, whose opinion was delivered by

SERGEANT J.—Nathan Taylor, one of eight children of Enoch Taylor, deceased, took a tract of land in Chester county, in a proceeding in partition in the Supreme Court, which had belonged to his deceased father, at the sum of £2126 8s. 4d., at which it had been appraised by the jury, subject to a lien thereon, in favour of the parties to the partition, (consisting of himself and the other children,) for their respective shares under the act of 11th of April, 1799. Nathan Taylor conveyed to Joseph Baker in fee simple. All the right of Baker was afterwards sold by the sheriff on a subsequent judgment and execution against him, to Joseph Miller, " subject to all legal incumbrances by mortgage, or otherwise created prior to the entry of the judgment on which the premises were sold." Miller conveyed to the defendant, subject (among other things) to the payment of the annual dower, being the interest arising on $1687 50, to the widow of Enoch Taylor, during life, " and at her decease, the payment of the said principal money, to and among the legal heirs of said Enoch Taylor deceased." The plaintiff received assignments from the heirs, amongst whom was Henry Taylor, son of Nathan Taylor deceased, and now contends that he is entitled to the whole sum of $1687 50, with interest from the decease of the widow. The court below rejected this claim, so far as respected the share of Nathan Taylor.

Nathan Taylor becoming the owner of land out of which he was to receive a share of the money charged upon it, and being thus both payer and receiver, the charge was extinguished, and the land passed from him to Baker, free and exonerated therefrom; when conveyed by the sheriff to Miller, subject to all legal incumbrances by mortgage or otherwise, created prior to the entry of the judgment on which the premises were sold, this share was not a legal incumbrance. The next deed to the defendant subjects the land to the payment of the sum of $1687 50, to and among the legal heirs of Enoch Taylor. In order to claim under this, the plaintiff must show a right in Henry Taylor, to a share as the legal heir; but it is clear

no such right existed in his father, or could be transmitted to him. The case of *Reigle* v. *Seiger*, (2 *Penn. Rep.* 348,) resembles the present. There land had been taken by a son at a valuation, subject to the widow's third, and was afterwards sold at sheriff's sale. It was held, that the son could not recover from the purchaser at sheriff's sale, his proportion of the third, after the widow's death; although by the condition of the sheriff's sale, the land was taken by the purchaser, subject to the widow's dower, the interest to be paid to her yearly, and after her decease, the principal to be paid to the heirs.

Another point in this case is the following. After the decease of the widow, the children, or their representatives, assigned to the plaintiff all their right and title to the widow's thirds or annual sum, as well as the principal sum and interest due thereon. There were due to the widow in her life-time, some arrears of her income not received by her, which the assignors claimed as next of kin to her, under the intestate law. For the amount, the defendant gave his bond to the plaintiff, and the question is, whether the consideration for the bond was a good one, the defendant contending that the assignment passed no title to the arrears of income, and that the defendant is liable to the administrator of the widow. The plaintiff says that the children, being the next of kin, are entitled as *cestui que trusts;* that if the administrator recovered be would be liable over to them, which would be going through a needless circuity of action, to attain the same result. We are of opinion, however, with the court below, that the objection is insurmountable.

It is well settled, and it is a principle too salutary to be departed from, that none but the executor or administrator has a legal right to dispose of the property and credits of the deceased, or intermeddle with them. Whatever might, after a settlement according to law, be the ultimate rights of the next of kin, these officers are the channel through which the property must in the first instance pass. If a child or next of kin, or even a creditor, whose claim is superior, could under any pretence step in and deal directly with the assets, it is obvious that letters testamentary, or administrations would seldom be resorted to, and that the precautions of the law for the selection of competent trustees for all concerned; for giving security; for requiring refunding bonds; and for transacting the affairs of the deceased under legal supervision, would be defeated. There can be no doubt the administrator of the wife could recover this money again, though the defendant should pay it to the plaintiff. For a full view of the reasoning on this head, I refer to the opinion of this court, delivered by Mr. Justice KENNEDY, in the case of *Eisenbise* v. *Eisenbise*, (4 *Watts*, 134,) where it was decided that a payment by a debtor to any other than the executor or administrator of the deceased, is a mis-payment, and the money so paid may be recovered back by the executor or administrator.

Judgment affirmed.